The relief described hereinbelow is SO ORDERED.

Signed October 13, 2011.

_____
Ronald B. King
United States Chief Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JAMES PATRICK GAVIGAN, | § | CASE NO. 10-53118-RBK |
| | § | |
| DEBTOR | § | CHAPTER 7 |
| | § | |
| PEARL MUSICAL INSTRUMENT COMPANY | § | |
| | § | |
| VS. | § | ADVERSARY NO. 10-5128-RBK |
| | § | |
| JAMES PATRICK GAVIGAN | § | |

SUMMARY JUDGMENT

On August 17, 2010, James Patrick Gavigan ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Prior to Debtor's bankruptcy filing, Debtor was one of ten defendants in a lawsuit filed in Bexar County, Texas by Pearl Musical Instrument Company ("Pearl") in August, 2007. Shortly before the state court jury trial, Debtor placed his company, Orpheus Music, Inc., which was one of the defendants, into bankruptcy. Judge Leif Clark dismissed

Orpheus's bankruptcy as a bad faith filing. The lawsuit was again delayed by removal to this Court in another bankruptcy case, but was remanded to state court on September 30, 2009. The state court action then continued, and on April 15, 2010, the parties reached an agreed judgment in Pearl's favor in the amount of $1.25 million against nine of the defendants, including Debtor. Subsequently, Pearl served Debtor with post-judgment interrogatories to discover assets to satisfy Pearl's judgment. Debtor answered the interrogatories, but Pearl claimed that the answers were largely incomplete or incorrect. Pearl then served a subpoena for documents and a deposition on written questions on the custodian of records for Tempest Musical Live LLC, by serving Debtor, who was Tempest's registered agent. Debtor did not produce any records, and the state court eventually found Debtor in contempt. When Pearl moved to enforce the contempt ruling, Debtor filed this Chapter 7 case on August 17, 2010.

Included in Debtor's bankruptcy filing was his Statement of Financial Affairs ("SOFA") and Schedule F, which listed Debtor's obligation to Pearl for $1.25 million. Debtor's SOFA reported his current monthly income as zero and his monthly living expenses as $5,876.00. Debtor listed his income as $12,000.00 in 2008 and $28,000.00 in 2009. On October 4, 2010, Debtor filed Amended Schedules and Statement of Financial Affairs. The Amended Schedules added "gift income" of $5,876.00 monthly on Schedule "I," and over $100,000.00 in the SOFA, which Debtor stated he received from a friend, Duane Fowler, in 2008 and 2009. Debtor provided no further details regarding the gift income or Mr. Fowler, however.

Pearl claims that Debtor did not submit full and accurate Schedules and SOFA. Specifically, Pearl argues that Debtor omitted reportable items from his Schedules and SOFA, failed to list

property transferred within two years immediately preceding the commencement of the case, failed to list all financial accounts that were closed, sold or otherwise transferred within one year immediately preceding the commencement of the case, and misstated or omitted certain business interests and affiliations. Because Debtor omitted or failed to list this information, Pearl asserts that Debtor should not be granted a discharge under section 727 of the Bankruptcy Code. Debtor responded by denying various contentions made by Pearl and attempting to explain others.

Pearl seeks summary judgment to deny Debtor's discharge based on violations of section 727 of the Bankruptcy Code. Section 727 lists several grounds that permit denial of a debtor's discharge, and a creditor need prove only one to prevent discharge. **Cadle Co. v. Duncan** (**In re Duncan**), 562 F.3d 688, 692 (5th Cir. 2009). The exceptions listed in section 727 should be "construed strictly against the creditor and liberally in favor of the debtor." *Id*. at 695.

In summary judgment proceedings, the party seeking summary judgment has the burden of proving that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. **Martin v. Alamo Cmty. Coll. Dist.**, 353 F.3d 409, 412 (5th Cir. 2003). Through its presentation of evidence, the movant is required to establish the existence or nonexistence of elements of a claim or defense in order to have its motion granted. **Fontenot v. Upjohn Co**., 780 F.2d 1190, 1194 (5th Cir. 1986). The burden of going forward with the evidence is on the nonmovant when the moving party makes a *prima facie* showing that it is entitled to judgment as a matter of law. **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). At that point, the nonmoving party must come forward with rebuttal evidence showing that the moving party is not entitled to judgment. **Ragas v. Tenn. Gas Pipeline Co**., 136 F.3d 455, 458 (5th Cir. 1998). Any doubts created

by the nonmovant's evidence are "to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).

1. *Whether Debtor violated § 727(a)(4)*.

Pearl first argues that Debtor should be denied a discharge because Debtor made "false statements and omissions in his bankruptcy Statements and Schedules, which ha[d] the added effect of concealing Debtor's true financial condition from creditors." Section 727(a)(4)(A) provides that a debtor should be denied discharge if "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The objecting party carries the burden to prove by a preponderance of the evidence that "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *Duncan*, 562 F.3d at 695.

False statements sufficient to deny a debtor's discharge "include a false statement or omission in the debtor's schedules." *FDIC v. Sullivan* (*In re Sullivan*), 204 B.R. 919, 942 (Bankr. N.D. Tex. 1995). A false statement or omission in a debtor's schedules or statement of financial affairs "must rise to the level of an intentional and willful defrauding of the creditors" to effectuate a denial of discharge. *Id*. A court can find this requisite intent to deceive where there exists a series of falsehoods, coupled "together with [the debtor's] failure to take advantage of the opportunity to clear up all inconsistencies and omissions." *Id*. Even a sequence of "innocent mistakes or omissions can constitute evidence of a pattern of reckless disregard for the truth," and therefore, the requisite

4

intent to deceive. *Id*. at 942-43. A court may, therefore, look to circumstantial evidence to determine whether the mistakes or omissions were intentional. *Id*. at 943.

Courts have found that a debtor possessed the requisite fraudulent intent to deny that debtor its discharge pursuant to section 727(a)(4) where the debtor provided a litany of misstatements and omissions that were corrected only after their falsity was brought to light by a creditor. For example, in **Sholdra v. Chilmark Fin. LLP** (**In re Sholdra**), 249 F.3d 380, 383 (5th Cir. 2001), the Fifth Circuit affirmed a summary judgment which denied a debtor's discharge where the debtor filed amended schedules only after the falsity of the original schedules was revealed. The Court determined that because the debtor made the corrections only after "his deposition confirmed the falsehood," the debtor possessed the requisite fraudulent intent to support a denial of discharge under section 727(a)(4). *Id*. Further, in **Sullivan**, a bankruptcy court denied a debtor's discharge where the debtor made "numerous omissions and false statements" that he knew to be false. **Sullivan**, 204 B.R. at 943. The court found unfiled drafts of the debtor's schedules and statement of financial affairs to be inconsistent with the filed schedules and statements, which the court believed indicated that the debtor "manipulated his responses to the questions on the Schedules and Statement." *Id*. Further, the debtor's amended schedules and statements were filed "long after the Original Schedules and Statement and did not correct many errors in the Original." Thus, the court concluded that the debtor possessed the requisite fraudulent intent to support a denial of discharge under 727(a)(4). *Id*.

Here, Pearl alleges that because Debtor made false statements and omissions in his bankruptcy Schedules and SOFA, Debtor possessed the requisite fraudulent intent, and denial of Debtor's discharge pursuant to section 727(a)(4) is appropriate. First, Pearl notes that Debtor failed

to report or disclose several assets and only amended his Schedules and SOFA after Pearl challenged their omission. Additionally, Pearl argues that Debtor made several false statements regarding his business, trade, and professional interests, including failing to report compensation from consulting engagements and failing to disclose his involvement as an officer, director, or board member of several organizations. Pearl notes that Debtor did not correct this information on either of his two amended versions of his Schedules. Pearl argues that these "serial misstatements and omissions by the Debtor" and the fact that "the Debtor amended his bankruptcy schedules only after his false statements were exposed by a creditor" prove that Debtor had the requisite fraudulent intent for his discharge to be denied under section 727(a)(4), and that summary judgment is appropriate to deny Debtor his discharge.

Debtor filed a response to Pearl's Motion for Summary Judgment and countered Pearl's allegations by pointing out that he corrected, denied, or attempted to explain the accusations brought by Pearl. Debtor's corrections to his Schedules and SOFA were numerous. In some instances, Debtor stated that he corrected any alleged falsities, but declined to explain why he did not include the information originally. Where the Debtor did offer explanations for the lack of information he provided, the explanations were inadequate. To explain the lack of information he provided about his benefactor, Mr. Fowler, Debtor stated that Mr. Fowler's anonymity is due to the fact that Mr. Fowler lives in Mexico, which requires Mr. Fowler to take "incredible procedures for his own safety" and is why Debtor could not disclose contact information.

The facts in this case are similar to the facts in *Sholdra* and *Sullivan*, both of which found the debtor possessed the requisite fraudulent intent to warrant denial of the debtor's discharge based

6

on violations of section 727(a)(4) of the Bankruptcy Code. First, as in ***Sholdra***, Debtor filed his amended Schedules and SOFA only after their falsity was revealed by Pearl. *See **Sholdra***, 249 F.3d at 383. Because Debtor made his amendments only after their falsity was revealed, these actions show that Debtor possessed the requisite intent to support the denial of discharge. Further, because this Debtor, like the debtor in Sullivan, made "numerous omissions and false statements" that he knew were false, as evidenced by the fact that he subsequently corrected or amended the Schedules and SOFA, Debtor's fraudulent intent to conceal his true financial condition from his creditors is proven. *See **Sullivan***, 204 B.R. at 943. Therefore, based on Debtor's misstatements and omissions in his Schedules and SOFA, this Court concludes that Debtor possessed the requisite fraudulent intent, and Debtor's discharge should be denied.

2.    ***Whether Debtor violated § 727(a)(3)***.

Pearl next alleges that Debtor should be denied discharge because he (1) failed to keep any records of his financial condition and (2) offered an unsupported explanation for his deficiency in assets and income to pay creditors. Pearl argues that these actions constitute violations of section 727(a)(3) of the Bankruptcy Code. Section 727(a)(3) provides that a debtor should be denied discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The financial records provided by the debtor need not contain full detail, but there should be written evidence of the debtor's financial condition. ***Robertson v. Dennis*** (***In re Dennis***), 330 F.3d 696, 703 (5th Cir. 2003). The creditor objecting to the debtor's discharge

7

"bears the initial burden of production to present evidence that the debtor failed to keep adequate records and that the failure prevented the creditor from evaluating the debtor's financial condition." *Duncan*, 562 F.3d at 697. The adequacy of the records provided by a debtor are reviewed on a "case by case basis," and certain factors, such as the debtor's "occupation, financial structure, education, experience, sophistication and any other circumstances" are considered. *Id*. The test to establish what standard of record keeping is required of a debtor is to determine whether the nature and extent of the debtor's transactions were such that others in like circumstances would ordinarily keep financial records. If the creditor meets its burden to show that the debtor failed to keep adequate records, then the burden is on the debtor to show that his failure to produce adequate records is "justified under all the circumstances." *Duncan*, 562 F.3d at 697.

The Fifth Circuit in *Duncan* upheld the decision of the bankruptcy court to grant a debtor discharge, though a creditor objected under section 727(a)(3) and claimed that the debtor failed to provide adequate records, finding that the debtor's disclosure of both "personal and corporate tax returns, bank statements, formation documents from his most recent entities, his will, life insurance policy, and other documents" sufficiently depicted the debtor's financial condition. *Id*. at 698. In contrast, a bankruptcy court denied a debtor's discharge based on section 727(a)(3), determining that the debtor "presented the court with spaghetti–numerous transactions going in all directions, all intertwined between [the debtor] and [other entities owned by the debtor], with no meaningful paper trail, and with nothing more than [the debtor's] after-the-fact explanation of what any particular transaction or transfer represented." *Womble v. Womble* (*In re Womble*), 289 B.R. 836, 859 (Bankr. N.D. Tex. 2003). This "spaghetti," the court determined, did not sufficiently depict the debtor's

financial condition. The court found that the Bankruptcy Code "demands more of a debtor," and because the debtor offered "no justification for his failure to keep adequate records and documents," denial of the debtor's discharge under section 727(a)(3) was proper. *Id*.

In ***Hill v. Jones*** (***In re Jones***), 327 B.R. 297, 304 (Bankr. S.D. Tex. 2005), a bankruptcy court denied a discharge where the debtor provided creditors and the trustee with "nothing more than bank statements and cashier's checks" that "merely list[ed] the dates and amounts of deposits into and withdrawals from [the debtor's] account," and did not fully account for the amount of cash the debtor had on hand. The court determined that the records provided by the debtor were "grossly inadequate," and did not sufficiently depict the debtor's financial condition. This lack of information left the trustee and the creditors to speculate as to the debtor's precise financial condition, and thus, denial of the debtor's discharge pursuant to section 727(a)(3) was proper. *Id*.

Pearl alleges here that Debtor "has produced almost no records of his assets, income, business interests, and financial transactions." Pearl points out that Debtor "does not maintain any bank accounts or other financial records" and claims that his only source of income comes from cash gifts given by a friend who lives in Mexico. Pearl argues that this lack of information has caused it to "speculate as to whether Debtor presently is receiving or holding more cash or other assets than he is reporting" and does not sufficiently depict Debtor's financial condition.

Further, Pearl asserts that Debtor has provided no justification for his lack of financial information. Pearl argues that Debtor is a "sophisticated debtor" and that he should be held to a higher standard of disclosure than an unsophisticated debtor. Pearl notes that Debtor received a masters and a doctoral degree and has owned, operated, or held positions of authority with a number

9

of companies. But regardless of what standard to which the Debtor is held, Pearl argues that Debtor has failed to explain his lack of records at all, and therefore should be denied discharge under section 727(a)(3).

Debtor, however, asserts that Pearl's allegations that he violated section 727(a)(3) by concealing, destroying, discarding, or failing to maintain necessary records is unfounded. In Debtor's Answer to Pearl's Motion for Summary Judgment, Debtor attempted to explain the lack of records he provided to his creditors. First, Debtor claims that Tempest Musical Live, the company for which Pearl seeks records, never conducted any business, and thus has no records to produce. Further, Debtor states that the "worldwide recession taking place in the three years has had an impact" on his inability to provide adequate records to his creditors. Additionally, Debtor asserts that the "huge" size of Pearl has hindered his ability to collect and provide records to his creditors. Debtor further asserts that he has corrected or added to previous statements regarding his financial situation, and, therefore, his Schedules and SOFA accurately depict his financial situation.

What little information Debtor has provided has left Pearl to "speculate" as to the exact status of Debtor's financial situation. Though a debtor's financial records "need not contain full detail . . . there should be written evidence of the debtor's financial condition." **Dennis**, 330 F.3d at 703. Here, there is little or no evidence of the Debtor's financial condition, and Debtor's only justification for the lack of records is that either no records exist, or records are unavailable. Further, where Debtor does offer justification for the lack of records, like the debtor in *Jones*, Debtor's explanations are "suspect." See *Jones*, 327 B.R. at 304. The Bankruptcy Code "demands more of a debtor" than what the Debtor in this case has provided. Because Pearl has shown that Debtor failed to provide

adequate records and offered no justification for his failure to keep adequate records and documents, denial of Debtor's discharge under section 727(a)(3) is proper.

## CONCLUSION

Summary judgment to deny discharge is proper under sections 727(a)(3) and (a)(4). It is, therefore, **ORDERED, ADJUDGED, AND DECREED** that the discharge sought by Debtor, James Patrick Gavigan, is hereby **DENIED**.

### # # #